UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GLENDA MARGARITA VILLASENOR,      )<br>                                                                )<br>                      Plaintiff,                      ) | Case  No. CV 11-2795 AJW |
|                                                                )<br>              v.                                            ) | MEMORANDUM OF DECISION |
|                                                                )<br>MICHAEL J. ASTRUE,                          )<br>Commissioner of the Social                 )<br>Security Administration,                       )<br>                                                                )<br>                      Defendant.                    )<br>_____) | |

      Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue. Plaintiff filed a separate document containing her reply to defendant's contentions.

**Administrative Proceedings**

      Plaintiff, then aged 38, filed her applications for benefits on November 29, 2007 alleging that she had been disabled since February 1, 2007. [JS 2; Administrative Record ("AR") 108-110, 113-116]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge (the "ALJ") found that plaintiff had a severe impairments consisting of status post multiple laminectomies, degenerative disc disease of the lumbar spine, and residual chronic low back pain, but that

she retained the residual functional capacity ("RFC") to perform a reduced range of light work. Based on the testimony of a vocational expert, the ALJ concluded that plaintiff's RFC did not preclude her from performing her past relevant work as an apartment manager. Therefore, the ALJ found plaintiff not disabled at any time through the date of his decision. [AR 52-59].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec.Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Treating source opinion**

Plaintiff contends that the ALJ erred in rejecting the opinion of her treating orthopedist, Divakar Krishnareddy, M.D.

Plaintiff saw Dr. Krishnareddy at Serra Community Medical Clinic ("Serra Medical") in Sun Valley, California from February 2007 through the date of the hearing in January 2010. [AR 28-29, 264-276]. During that period plaintiff also received treatment at Universal Care Medical Group ("Universal Care") in Long Beach, California. [AR 159-161, 179-180, 189-191, 201-233, 277-285].

Beginning in early 2007 plaintiff was seen at Universal Care for complaints of back pain. She was prescribed medication, including the narcotic pain reliever Vicodin (hydrocodone with acetaminophen). [AR 214-223].

1    The record does not contain a progress note from plaintiff's initial visit to Dr. Krishnareddy in
2 February 2007. On September 12, 2007, Dr. Krishnareddy saw plaintiff for complaints of constant back
3 pain. He concluded that she needed a lumbar spine MRI, and he prescribed Ambien, a sleep aid. It was
4 noted that plaintiff was a Medi-Cal patient. [AR 275-276].

5    Plaintiff was seen at Universal Care for treatment of back pain several times between September 26,
6 2007 and December 4, 2007. [AR 202-211]. Abnormal findings included positive straight leg raising test,
7 reduced lumbar flexion, and tenderness at L4-5 and L5-S1. Diagnoses of coccydynia (tailbone pain), disc
8 herniation, and disc disease were noted. [AR 58, 203-204, 208]. A November 2007 lumbar spine bone scan
9 yielded an impression of lower lumbar and degenerative joint disease. [AR 201]. Along with Vicodin,
10 plaintiff was prescribed Toradol (ketoralac), a nonsteroidal anti-inflammatory drug; Cymbalta, an anti-
11 depressant; and Robaxin (methocarbamol) a muscle relaxant. [AR 202-211].

12    A progress note from Universal Care dated February 26, 2008 indicated that plaintiff had been
13 "unable to obtain" an MRI. [AR 285].

14    On March 5, 2008, Universal Care physician Steven Hwang, M.D. requested authorization for an
15 MRI for a diagnosis of "sciatic radiculopathy, failed back surgery." [AR 285]. The stated reason for the
16 request was "pain management, epidural steroid injections." [AR 284]. Plaintiff complained of severe back
17 pain, difficulty sitting and walking, inability to sleep. [AR 284].

18    On March 8, 2008, plaintiff underwent a consultative orthopedic examination with Carlos Gonzalez,
19 M.D., at the Commissioner's request. Dr. Gonzalez elicited a history, performed an orthopedic and
20 neurological examination, and reviewed lumbar spine x-rays. [AR 250-255]. Dr. Gonzalez noted that
21 plaintiff's physical examination was significant for mild tenderness to palpation over the coccyx as well as
22 over the midline and paraspinal region of the lumbar spine. He found no evidence of neurological deficits.
23 Dr. Gonzalez opined that plaintiff could perform what amounts to the full range of medium work. He said
24 that plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently, and that she
25 had no restrictions in standing, walking, sitting, postural activities, or manipulative activities. [AR 253-254].

1    A lumbar spine MRI was conducted at Dr. Hwang's request on March 28, 2008. [AR 262[1]]. The
2 MRI report contains numerous positive findings at L3-4, L4-5 and S1, including severe disc height loss with
3 vacuum phenomenon (indicative of degenerative disc disease) and post-operative changes along the right
4 paraspinal soft tissue and right epidural space at L5-S1; bilateral foraminal narrowing; diffuse annular disc
5 bulge at L4-5 with evidence of encroachment on the S1 nerve root; and right foraminal lateral disc bulge
6 into the neural foramen. [AR 262].

7    On April 9, 2008, plaintiff saw Dr. Hwang for a follow-up on her MRI. [AR 282]. He noted that
8 plaintiff received an epidural injection for pain. Dr. Hwang referred plaintiff for "pain management for
9 failed back surgery." [AR 282].

10    On June 23, 2008, plaintiff returned to Dr. Krishnareddy for a follow-up for back problems. [AR
11 274]. She reported back pain radiating to right lower extremity and insomnia. She said that she had
12 undergone an epidural injection without much relief. On examination, she exhibited tenderness at L3-4, L5,
13 and S1 as well as muscle spasms. Dr. Krishnareddy diagnosed lumbar radiculopathy. Plaintiff was
14 prescribed Vicodin and Ambien. [AR 274].

15    Plaintiff underwent a lumbar spine x-ray at Serra Medical on August 7, 2008. Degenerative disc
16 disease and arthritis were noted at L4-5 and L5-S1. [AR 273].

17    On August 25, 2008, plaintiff returned to Universal Care for follow-up and medication refills. [AR
18 281].

19    Plaintiff saw Dr. Krishnareddy for follow-up on September 11, 2008 with complaints of severe back
20 pain. Dr. Krishnareddy noted a referral for additional back surgery, which plaintiff described as a spinal
21 fusion. [AR 272; see AR 29, 189]. Dr. Krishnareddy wrote "arachnoiditis"[2] followed by what appears to
22 be the phrase "clinical finding." [AR 272]. That same day, Dr. Krishnareddy completed a "Physical

---

[1] The MRI report, which is included in the record and was cited by the ALJ, contradicts defendant's assertion that no MRI "was performed in March 2008 or at any other time." [JS 11].

[2] Arachnoiditis is "inflammation of the arachnoid membrane often without involvement of the subjacent subarachnoid space." Stedman's Medical Dictionary arachnoiditis (27th Ed. 2000). The arachnoid membrane is one of the three meninges (membranes) that covers the brain and the spinal cord. See The Free Dictionary by Farlex, "arachnoid," available online at http://www.thefreedictionary.com/arachnoid+membrane (last accessed March 19, 2012).

4

1  Residual Functional Capacity Questionnaire" stating that plaintiff had diagnoses of status post lumbar
2  laminectomies (two), arachnoiditis, recurrent herniation, and spinal stenosis. [AR 265]. Dr. Krishnareddy
3  opined that plaintiff could occasionally lift and carry less than ten pounds. She could walk and stand less
4  than two hours in an eight-hour day. Sitting was "affected," but no specific limitation in sitting was noted,
5  other than that plaintiff needed to be able shift between sitting and standing or walking at will. Plaintiff had
6  unspecified limitations in pushing and pulling with the upper and lower extremities. She could not perform
7  postural activities or reaching, but she could perform occasional handling and frequent fingering. She also
8  would need to take unscheduled breaks during an eight-hour work day. [AR 265-268].

9  Dr. Krishnareddy described plaintiff's subjective symptoms as constant severe pain in her back and
10 legs. He said that supporting clinical findings and objective signs were range of motion limitation and MRI
11 findings showing involvement of the lower lumbar spine. [AR 265]. He characterized plaintiff's prognosis
12 as "poor." [AR 265].

13 During the January 12, 2010 hearing, plaintiff testified that Dr. Krishnareddy had administered an
14 epidural injection that was not effective, and that he recently had obtained approval to give her two more
15 epidural injections that she hoped would alleviate her chronic pain. [AR 28]. Plaintiff testified that if those
16 injections failed, she would probably accept Dr. Krishnareddy's recommendation for a spinal fusion surgery
17 because her back pain was "unbearable." [AR 29]. For pain, plaintiff testified that she took "extra strength
18 Vicodin," the narcotic pain reliever Darvocet (acetaminophen and propoxyphene), and Neurontin
19 (gabapentin). [AR 31-32].

20 The ALJ concluded that the medical evidence of record showed degenerative changes in plaintiff's
21 back. Specifically, he noted that lumbar spine x-rays and a bone scan taken in November 2007 showed
22 degenerative joint disease, and that a March 2008 MRI also revealed degenerative changes, narrowing of
23 the neural foramina, a disc bulge, and enlargement of the nerve root. [AR 54-55, 201-202, 233, 262]. The
24 ALJ remarked that plaintiff had a "history of failed back surgery in 1989 and 2002. Since the surgeries,
25 [plaintiff] has continued to have significant back pain and tenderness." [AR 55, 281]. The ALJ cited
26 treatment reports indicating that plaintiff was unable to sit during an April 2008 office visit, exhibited
27 paraspinal tenderness and reduced spinal flexion in May 2008, and complained of back pain radiating into
28 the right leg with lumbar spine tenderness in June 2008. [AR 55, 274, 281].

The ALJ found that plaintiff had the physical RFC for light work with occasional postural activities. [AR 56]. The ALJ said that Dr. Gonzalez's examination findings supported that RFC. However, the ALJ rejected Dr. Gonzalez's assessment that plaintiff could perform medium work because "the overall record does reveal chronic pain [that] is only partially relieved by medication." [AR 58]. Thus, the ALJ concluded that Dr. Gonzalez's opinion was not fully consistent with the record as a whole.

Nonetheless, the ALJ rejected Dr. Krishnareddy's treating source opinion on the ground that Dr. Krishnareddy: (1) provided no long-term treating notes to support his conclusions; (2) appeared to base his conclusions on the August 8, 2008 x-ray, which "did not reveal any additional degenerative changes when compared with the x-ray supplied by Dr. Gonzalez in March 2008"; and (3) only refilled medications during plaintiff's two office visits, in June 2008 and August 2008. [AR 58].

A treating physician's opinion is not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). However, a treating physician's medical opinion as to the nature and severity of an individual's impairment is entitled to controlling weight when that opinion is well-supported and not inconsistent with other substantial evidence in the record. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2. Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization. Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d at 1202.

If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th

Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).[3]

The reasons given by the ALJ for rejecting Dr. Krishnareddy's opinion were not specific and legitimate. The ALJ faulted Dr. Krishnareddy for not providing "long-term" treating notes to support his conclusions. When he rendered his opinion in September 2008, Dr. Krishnareddy had been treating plaintiff since February 1, 2007 and had seen her four times. That is long enough to establish a treating physician relationship. See Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994) (holding that the conclusions of a physician who treated the claimant twice in fourteen months were entitled to deference). Dr. Krishnareddy also referred plaintiff for two imaging studies, an MRI and an x-ray. His examination reports and plaintiff's imaging studies contained abnormal findings supporting his opinion. Furthermore, the signs, symptoms, and laboratory findings reflected in plaintiff's Universal Care treatment notes were consistent as a whole with Dr. Krishnareddy's findings and conclusions. Plaintiff's undisputed history of two failed back surgeries is an additional factor buttressing Dr. Krishnareddy's opinion.

In view of Dr. Krishnareddy's ongoing treatment relationship with plaintiff, the supportability of his diagnoses, and the consistency of his opinion with other medical evidence in the record, the absence of "longer term" treatment notes was not a legitimate reason for rejecting his opinion or relying on the conflicting opinion of Dr. Gonzalez, who saw plaintiff only once and whose functional assessment the ALJ found inconsistent with the record as a whole. Moreover, Dr. Gonzalez did not have the benefit of reviewing the MRI ordered by Dr. Krishnareddy or plaintiff's other medical records. See Edlund, 253 F.3d at 1157 & n.6 (enumerating factors affecting the relative weight of medical opinions).

The ALJ also said that he rejected Dr. Krishnareddy's opinion because it appeared to be based on the August 8, 2008 x-ray, which "did not reveal any additional degenerative changes when compared with the x-ray supplied by Dr. Gonzalez in March 2008." [AR 58]. Dr. Krishnareddy did not mention x-ray findings in support of his September 2008 opinion, so his interpretation of x-ray findings is not a legitimate

---

[3] The Commissioner contends that under his regulations, which are "entitled to deference," an ALJ "must give good reasons" supported by substantial evidence for rejecting or discounting a treating physician's opinion, and that "[t]o the extent the Ninth Circuit's judicially created standard exceeds the requirements set forth by Congress and by the Commissioner at Congress's behest, it is improper." [JS 7]. This Court, however, is bound by Ninth Circuit law, and therefore the merits of the Commissioner's contention are not addressed.

7

1 reason for rejecting that opinion. Moreover, Dr. Krishnareddy's interpretation of x-ray findings that were
2 essentially unchanged from x-ray findings considered by Dr. Gonzalez ordinarily would be entitled to
3 deference. See Lester, 81 F.3d at 832-833 ("The Commissioner is required to give weight not only to the
4 treating physician's clinical findings and interpretation of test results, but also to his subjective judgments.
5 . . . The treating physician's continuing relationship with the claimant makes him especially qualified to
6 evaluate reports from examining doctors, to integrate the medical information they provide, and to form an
7 overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall
8 course of treatment."); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)("When an examining
9 physician relies on the same clinical findings as a treating physician, but differs only in his or her
10 conclusions, the conclusions of the examining physician are not 'substantial evidence.'").

11 The ALJ's final reason for rejecting Dr. Krishnareddy's opinion was that he "only refilled
12 prescriptions" during plaintiff's June 2008 and August 2008 visits. Dr. Krishnareddy's June 2008 progress
13 report notes plaintiff's subjective symptoms, examination findings, a diagnostic impression (lumbar
14 radiculopathy), and a plan consisting of prescriptions for Vicodin, Ambien, and return for follow-up. [AR
15 274]. In August 2008, Dr. Krishnareddy ordered a lumbar spine x-ray. [AR 273]. During plaintiff's follow-
16 up visit on September 11, 2008, Dr. Krishnareddy gave plaintiff a referral for back surgery. [AR 272; see
17 AR 28, 189, 272]. Dismissing these examination and diagnostic reports as visits merely to refill
18 prescriptions mischaracterizes the record.

19 The ALJ's failed to meet his burden to "set[] out a detailed and thorough summary of the facts and
20 conflicting clinical evidence" and make "findings setting forth specific, legitimate reasons" for rejecting Dr.
21 Krishnareddy's treating source opinion in favor of Dr. Gonzalez's less than fully credible opinion. Thomas,
22 278 F.3d at 957. Therefore, the ALJ committed reversible legal error.

23 **Remedy**

24 The choice whether to reverse and remand for further administrative proceedings, or to reverse and
25 simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th
26 Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of
27 benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038
28 (2000). The Ninth Circuit has adopted the "Smolen test" to determine whether evidence should be credited

1 and the case remanded for an award of benefits:

2     (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (quoting Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996)). Where the Smolen test is satisfied with respect to the evidence in question, "then remand for determination and payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting" the improperly discredited evidence. Harman, 211 F.3d at 1179; Varney v. Secretary of Health & Human Servs., 859 F.2d 1396, 1400-1401 (9th Cir. 1988).

    The ALJ did not meet his burden to articulate legally sufficient reasons for rejecting Dr. Krishnareddy's treating source opinion. See Lester, 81 F.3d at 834 (stating the general rule that the improperly discredited opinion of a treating or examining physician is credited as true as a matter of law); see also Harman, 211 F.3d at 1179 (explaining that even if there are grounds on which the ALJ could legitimately have relied to reject a treating physician's opinion, the "crediting as true" rule is warranted in order to improve the performance of ALJs by requiring them to articulate those grounds in the original decision and to discourage them from reaching a conclusion first, and then attempting to justify it by ignoring competent evidence). However, outstanding issues remain to be decided before a determination of disability can be made, namely whether plaintiff can perform past relevant work or alternative work with the specific physical limitations described by Dr. Krishnareddy in his improperly discredited September 2008 opinion.

    Therefore, Dr. Krishnareddy's September 2008 functional assessment is credited as true as a matter of law, and this case is remanded for further administrative proceedings limited to findings regarding plaintiff's ability to perform past relevant work or alternative work. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003) (applying the Smolen test to hold that while the ALJ did not properly reject the opinions of the treating physicians or the claimant's subjective complaints and lay witness testimony, several "outstanding issues" remain to be resolved, including whether, according to a vocational expert, there was

alternative work the claimant could perform).[4]

### Conclusion

For the reasons stated above, the Commissioner's decision is **reversed**, and the case is **remanded** for further administrative proceedings consistent with this memorandum of decision

**IT IS SO ORDERED.**

March 21, 2012

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[4] This disposition makes it unnecessary to consider plaintiff's remaining contentions.